JTW: 03.25.24
KSC/AS: USAO #2024R00205



**SEALED**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | **CRIMINAL NO.** BAH 24 cr 102 |
| **v.** | * | |
| | * | |
| **JOSUE MAURICIO ARRUE PANIAGUA,** | * | **(RICO Conspiracy, 18 U.S.C.** |
| **aka Limpio, Funny,** | * | **§ 1962(d); Accessory After the Fact,** |
| | * | **18 U.S.C. § 3; Conspiracy to Assault** |
| | * | **with Dangerous Weapon in Aid of** |
| | * | **Racketeering, 18 U.S.C. § 1959(a)(6);** |
| | * | **Assault with Dangerous Weapon in** |
| **JOSE EDUARDO GUARDADO** | * | **Aid of Racketeering, 18 U.S.C. §** |
| **MERCADO,** | * | **1959(a)(3); Possession with intent to** |
| **aka Tortuga, Demente,** | * | **Distribute Controlled Substances, 21** |
| **ISMAEL LOPEZ LOPEZ,** | * | **U.S.C. § 841; Possession of a** |
| **aka Melo, El Gato,** | * | **Firearm in Furtherance of a Drug** |
| **JOSE ROBERTO RAMOS LOPEZ,** | * | **Trafficking Crime, 18 U.S.C. §** |
| **aka Agonia, Moreno, El Sin,** | * | **924(c); Possession of a Firearm by a** |
| **ELMER BLADIMIR REYES REYES,** | * | **Prohibited Person, 18 U.S.C. §** |
| **aka Little Jason,** | * | **922(g); Aiding and Abetting, 18** |
| **and** | * | **U.S.C. § 2; Forfeiture, 28 U.S.C. §** |
| **ISMAEL IVAN RIVERA CANALES,** | * | **2461(c), 18 U.S.C. § 924(d), 21 U.S.C.** |
| **aka Tijeras,** | * | **§ 853(a))** |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**INDICTMENT**

**COUNT ONE**

**(Conspiracy to Participate in a Racketeering Enterprise)**

The Grand Jury for the District of Maryland charges that:

**Introduction**

1.      *La Mara Salvatrucha*, also known as the MS-13 gang ("MS-13"), was a gang composed primarily of immigrants or descendants of immigrants from El Salvador, with members operating in the State of Maryland, including in Anne Arundel County, Montgomery County, Prince George's County, Frederick County, and throughout the United States.

1

2.      The name "Mara Salvatrucha" was a combination of several slang terms.  The word "Mara" was the term used in El Salvador for "gang."  The word "Salvatrucha" was a combination of the words "Salva," which was an abbreviation for "Salvadoran," and "trucha," which was a slang term for "fear us," "look out," or "heads up."

3.      In the United States, MS-13 has been functioning since at least the 1980s.  MS-13 originated in Los Angeles, California, where MS-13 members banded together for protection against the larger Mexican groups.  MS-13 evolved into a gang that engaged in turf wars for the control of drug distribution locations.  MS-13 quickly spread to states across the country, including Maryland.

4.      MS-13 was a national and international criminal organization and was one of the largest street gangs in the United States.  Gang members actively recruited members, including juveniles, from communities with a large number of Central American immigrants.

5.      **JOSUE MAURICIO ARRUE PANIAGUA,** ███████████████████ █████████████████████████████████ **JOSE EDUARDO GUARDADO MERCADO, JOSE ROBERTO RAMOS LOPEZ, ELMER BLADIMIR REYES REYES, and ISMAEL IVAN RIVERA CANALES,** and others known and unknown, were members and associates of MS-13.

6.      Members of MS-13 from time to time signified their membership by wearing tattoos reading "MARA SALVATRUCHA," "MS," "MS-13," or similar tattoos, often written in gothic lettering.  Members also signified their membership through tattoos of devil horns in various places on their bodies.  Members sometimes avoided conspicuous MS-13 tattoos, instead wearing discreet ones such as "503," spider webs, three dots in a triangle formation signifying the phrase "*mi vida loca*," or clown faces with phrases such as "laugh now, cry later."  Some MS-13 members

have chosen not to have tattoos at all, or to have them placed on areas such as the hairline where they can be easily covered to conceal their gang affiliation from law enforcement.

7.     The gang colors of MS-13 were blue, black, and white, and members often wore clothing, particularly sports jerseys, with the number "13," or with numbers that, when added together, totaled 13, such as "76." MS-13 members also wore blue and white clothing to represent their membership, including blue and white shoes such as the Nike "Cortez" sneakers. As with tattoos, some MS-13 members selected more discreet ways of dressing to signify their membership and at the same time avoid detection by law enforcement.

8.     MS-13 members referred to one another by their gang names, or monikers, and often did not know fellow gang members except by their gang names.

9.     Members of MS-13 were expected to protect the name, reputation, and status of the gang from rival gang members and other persons. MS-13 members required that all individuals show respect and deference to the gang and its membership. To protect the gang and to enhance its reputation, MS-13 members were expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence. MS-13's creed was based on one of its mottos, "*Mata, viola, controla*," which translated in sum and substance to, "Kill, rape, control," and, "*ver oir y callar*," which means, "see nothing, hear nothing and say nothing."

10.     Members and associates of MS-13 frequently engaged in criminal activity, including, but not limited to, murder, assault, drug trafficking, robbery, and extortion, as well as attempts and conspiracies to commit such offenses. MS-13 members were required to commit acts of violence to maintain membership and discipline within the gang, as well as against rival gang members. Participation in criminal activity by a member, particularly in violent acts directed at

rival gangs or as directed by gang leadership, increased the respect accorded to that member, resulted in that member maintaining or increasing his position in the gang, and opened the door to a promotion to a leadership position. One of the principal rules of MS-13 was that its members must attack and kill rivals whenever possible. Rivals were often referred to as "*chavalas.*" MS-13, particularly in the areas of Frederick County, Anne Arundel County, Prince George's County and Montgomery County, Maryland, maintained rivalries with the 18th Street gang, among others.

11.     Prospective members who sought to join MS-13 were required to prove themselves over time. Individuals who associated with and were friends of the gang were called "*paisas.*" Individuals who did favors and other acts for the gang were called "*paros.*" Persons being observed by the gang for potential membership were known as "*observations.*" Individuals who had advanced to the final level before being "jumped in" were called "*chequeos.*" *Chequeos* underwent a probationary period during which they were required to commit additional, more serious crimes on behalf of MS-13 to achieve trust and prove their loyalty to the gang. To join MS-13 and become full members or "homeboys," prospective members were required to complete an initiation process, often referred to as being "jumped in" or "beat in" to the gang. During that initiation, other members of MS-13 would beat the new member, usually until a gang member finished counting aloud to the number thirteen, representing the "13" in MS-13.

12.     MS-13 was an international criminal organization and was organized in Maryland and elsewhere into "cliques," that is, smaller groups operating in a specific city or region. Cliques operated under the umbrella rules of MS-13. MS-13 cliques often worked together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement. In Maryland and the surrounding area these cliques included, among others, the Fulton Locos Salvatrucha ("FLS" or "Fulton"), Western Locos Salvatrucha ("WLS" or "Western"), and

Parkview Locos Salvatrucha ("PVLS").  MS-13 cliques also joined together to form regional or national "programs" to assist with coordination among cliques and oversight.  Clique leaders regularly met with each other and "program" leadership.

13.  **JOSUE MAURICIO ARRUE PANIAGUA** was a member and associate of the Western or WLS Clique of MS-13.

14.  ███████████████████████ **JOSE EDUARDO GUARDADO MERCADO,** ███████████████████████ **JOSE ROBERTO RAMOS LOPEZ,** and **ISMAEL IVAN RIVERA CANALES,** were members and associates of the Fulton or FLS Clique of MS-13.

15.  **ELMER BLADIMIR REYES REYES** was a member and associate of the PVLS Clique of MS-13.

16.  Each clique was presided over by the "First Word," the leader or president of the clique.  The leader was also sometimes referred to as *"Primera Palabra,"* or *"Corredor."*  The "Segundo Palabra," or "Second Word," was the second-in-command of the clique.  General members were required to take orders from the First Word and Second Word.  Clique leaders would often designate particular homeboys to take leadership positions over certain geographical areas.

17.  MS-13 cliques kept in contact and reported to the leaders for their respective cliques, who were oftentimes based in various states or in El Salvador.  Cliques contacted their leaders based in other states or El Salvador using cellular telephones during clique meetings to keep them updated on gang business, for advice, and to resolve disagreements regarding operations among local cliques.

18.     MS-13 members met on a regular basis to, among other things, discuss gang affairs and report on acts of violence committed by their members, with the goal of inciting and encouraging further violence.  Each clique held clique meetings where business specific to that clique was discussed.  Any perceived indiscretions by members or violations of MS-13 rules were talked about at clique meetings and punishments or "violations" were issued.  Violations often took the form of beatings by fellow MS-13 members, often referred to as "court."  More serious violations resulted in the issuance of a "greenlight," which was an order and/or approval to kill.

19.     MS-13 leaders from various cliques also held regional meetings to discuss issues between cliques and discuss criminal ventures among the cliques.  Clique leaders from across the United States, from other countries, and within regions of the United States would meet or communicate by telephone conference to discuss gang rules and gang business, to resolve problems or issues among cliques and gang members of different cliques, and to unite gang members from across the country.

20.     MS-13 received money and income from sources including member dues and the extortion or "taxing" of brothels and other illegitimate businesses.  (Extortion payments were often referred to as "rent.")  MS-13 also received money and income from narcotics trafficking.   Such funds were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members who were imprisoned in the United States, both inside and outside of Maryland.

21.     MS-13 members communicated about gang activities with other MS-13 members in Maryland and elsewhere using mobile telephones, telephone text messages, messaging applications, such as WhatsApp and Telegram, social media such as Facebook and Instagram, e-mail accounts, and other modes of communication.

**The Racketeering Enterprise**

22.     MS-13, including its leadership, membership, and associates, constituted an enterprise as defined in 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected interstate and foreign commerce ("the Enterprise"). The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

### Purposes of the Enterprise

23.     The purposes of the MS-13 Enterprise included:

a.     Preserving and protecting the power, territory, reputation, and profits of the enterprise through the use of intimidation, threats of violence, and violence, including assaults and murder;

b.     Promoting and enhancing the enterprise and its leaders', members', and associates' activities, including, but not limited to, murder, extortion, drug trafficking, and other criminal activities;

c.     Keeping victims, potential victims, and community members in fear of the enterprise through violence and threats of violence;

d.     Providing financial support and information to gang leaders, members, and associates, including individuals incarcerated;

e.     Providing assistance to gang leaders, members, and associates who committed crimes on behalf of the enterprise; and

f.     Hindering, obstructing, and preventing law enforcement officers from identifying participants in the enterprise's criminal activity; from apprehending the perpetrators of those crimes; and from successfully prosecuting and punishing the offenders.

### Means and Methods of the Enterprise

24.     Among the means and methods by which the members and associates of MS-13 conducted and participated in the conduct of the affairs of the Enterprise were the following:

a.      The members and associates of MS-13 used intimidation, threats of violence, and violence, including assaults and murder, to preserve, expand, and protect MS-13's territory and activities, to promote and enhance its prestige, reputation, and position in the community, and to discipline gang members who had been disloyal or had violated gang rules.

b.      The members and associates of MS-13 attended regular gang meetings and communicated with other MS-13 members to discuss, among other things: the structure and organization of the gang; past criminal acts committed against rival gang members and others; identifying for the purpose of assaulting or murdering rival gang members and others; efforts to increase gang income, through means such as drug trafficking and extortion; MS-13 leaders, members, and associates who had been arrested or incarcerated; disciplining MS-13 leaders, members, and associates who had violated gang rules; police interactions with MS-13 leaders, members, and associates; the identities of individuals suspected of cooperating with law enforcement, and proposed actions to be taken against them; and plans and agreements regarding the commission of future crimes, as well as ways to conceal these crimes.

c.      The members and associates of MS-13 also communicated with other MS-13 members in Maryland and elsewhere, and represented their gang allegiance, through social media such as Facebook, including by posting photographs of themselves with other gang members, showing gang hand signs, wearing colors or clothing associated with MS-13, and posing with weapons or gang-related graffiti, and by sending and/or posting messages, images, and memes referencing their affiliation with MS-13.

d.      The members and associates of MS-13 financed the enterprise through a variety of activities, including the extortion of money – sometimes referred to as "rent" – from legitimate and illegitimate businesses operating on the gang's turf.

e.      The members and associates of MS-13 distributed and agreed to distribute controlled substances on behalf of the gang.

f.      The funds raised by the gang were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members, including those imprisoned in the United States, inside and outside of Maryland.

g.      The members and associates of MS-13 hindered and obstructed the efforts of law enforcement to identify, apprehend, and successfully prosecute and punish gang members.

h.      The members and associates of MS-13 would investigate rival gang members or other persons targeted for violence; would obtain information about such targets, including locations frequented by them; and would use such information in their plans to attack such targets.

i.      The members and associates of MS-13 would and did agree that acts involving murder, including conspiracy and attempts to commit murder, and other acts of violence, would be committed by members and associates of MS-13 against rival gang members and persons deemed as threats to MS-13 and for the purpose of imposing discipline within the gang, and on other occasions as deemed necessary.

**The Racketeering Conspiracy**

25.      Beginning on a date unknown, but at least prior to in or about 2022, and continuing through at least in or about the date of this indictment, in the District of Maryland and elsewhere,

**JOSUE MAURICIO ARRUE PANIAGUA,**
**aka Limpio, Funny,**

**JOSE EDUARDO GUARDADO MERCADO,**
**aka Tortuga, Demente,**
**JOSE ROBERTO RAMOS LOPEZ,**
**aka Agonia, Moreno, El Sin,**
**ELMER BLADIMIR REYES REYES,**
**aka Little Jason,**
**and**
**ISMAEL IVAN RIVERA CANALES,**
**aka Tijeras,**

the defendants herein, and others known and unknown, being persons employed by and associated

with MS-13, an enterprise engaged in, and the activities of which affected, interstate and foreign

commerce, did knowingly conspire and agree to violate 18 U.S.C. § 1962(c), that is to conduct and

participate directly and indirectly, in the conduct of the affairs of the MS-13 Enterprise through a

pattern of racketeering activity, as defined in 18 U.S.C. §§ 1961(1) and (5), which pattern of

racketeering activity consisted of:

    (a)    Multiple acts involving:

        (1)    murder in violation of Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, and 2-206, 1-201, 1-202, and the Common Law of Maryland, punishable pursuant to Maryland Code, Criminal Law §§ 1-201, 1-202, 2-201, 2-204, 2-205, and 2-206; and

        (2)    extortion, in violation of Maryland Code, Criminal Law §§ 3-701 and 3-705, 1-201, 1-202, and the Common Law of Maryland;

    (b)    Multiple offenses involving drug trafficking in violation of 21 U.S.C. §§ 841 and 846; and

    (c)    Multiple acts indictable under 18 U.S.C. § 1951 (relating to interference with commerce, robbery, or extortion).

10

26.     It was further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

### Overt Acts

27.     In furtherance of the conspiracy, and to effect the illegal object thereof, the defendants and their co-conspirators performed, participated in, and did the following acts, among others, in the District of Maryland and elsewhere:

a.      In or about July 2022, members and associates of MS-13 conspired to assault Victim R.M.B. because R.M.B. wanted to leave the gang.

b.      On or about July 10, 2022, members and associates of MS-13 told R.M.B. to go to a secluded, wooded area in Frederick, Maryland because he needed to get a "court," i.e., a discipline.

c.      On or about July 10, 2022, GUARDADO MERCADO took R.M.B.'s cell phone and found that R.M.B. had sent text messages to someone asking them to contact the police because R.M.B. was in danger.  GUARDADO MERCADO then destroyed R.M.B.'s cell phone.

d.      On or about July 10, 2022, ████████████ GUARDADO MERCADO, RIVERA CANALES, and other MS-13 members and associates assaulted R.M.B., stopping out of fear that the police might be responding to the area.

e.      In or about August 2022, members and associates of MS-13 had an on-going problem with Victim J.C.M. because J.C.M. had allegedly falsely claimed to have gang status and had prior disputes with MS-13 gang members.

f.      On or about August 28, 2022, ARRUE PANIAGUA and other members and associates of MS-13 confronted Victim J.C.M. in the middle of the day at a crowded park in

Frederick, Maryland about MS-13's problems with J.C.M. and, during that confrontation, ARRUE PANIAGUA shot J.C.M. in the chest.  J.C.M. ultimately survived but was paralyzed from the waist down.

g.      On or about November 3, 2022, GUARDADO MERCADO possessed marijuana with the intent to distribute it.

h.      On or about November 3, 2022, GUARDADO MERCADO possessed a firearm, to wit, a NORINCO, model M-201C, 9x19 millimeter, serial number 4CCC4259.

i.      On or about February 24, 2023, ████████████████████████████ REYES REYES, RIVERA CANALES, and other members and associates of MS-13 gathered near an apartment complex in Frederick, Maryland.  During that meeting, REYES REYES and others questioned Victim L.L.F., a juvenile, about his association with the rival 18th Street gang.

j.      On or about February 24, 2023, ████████████████████████████ REYES REYES, RIVERA CANALES, and other members and associates of MS-13 lured Victim L.L.F. to a secluded, wooded area in Frederick, Maryland, claiming they wanted a place to smoke marijuana with L.L.F.  Once in the secluded, wooded area in Frederick, Maryland, ████████████ ████████████████ REYES REYES, RIVERA CANALES, and other members and associates of MS-13 attacked Victim L.L.F. with knives and machetes, ultimately killing Victim L.L.F.

k.      On or about February 24, 2023, ████████████████████████████ RAMOS LOPEZ, REYES REYES, RIVERA CANALES, and other members and associates of MS-13, sought to dispose of the evidence of the murder of Victim L.L.F. ████████████████ REYES REYES, RAMOS LOPEZ, and Ismael Lopez Lopez transported the body of Victim L.L.F. to a more remote wooded area of Maryland and buried Victim L.L.F.'s body in two clandestine graves.  Prior to transporting and burying the body of L.L.F., members and associates of MS-13

cut the body into pieces and placed the pieces in garbage bags.  REYES REYES, RIVERA CANALES, and other members and associates of MS-13 disposed of clothing worn and weapons used in the murder of Victim L.L.F.

　　　　l.　　Between in or about 2022, through the date of this indictment, ARRUE PANIAGUA, ███████████████████ GUARDADO MERCADO, RAMOS LOPEZ, REYES REYES, RIVERA CANALES, and other members and associates of MS-13 conspired to, and did, distribute marijuana and cocaine to raise funds for MS-13 to purchase marijuana, cocaine, and weapons for the gang, and to send to MS-13 members and associates in Maryland, in other states.

　　　　m.　　Between in or about 2022, through the date of this indictment, ███████ ████████████████ RAMOS LOPEZ, and other members and associates of MS-13 extorted money from victims by threatening and using force, violence, and fear.  Specifically, members and associates of MS-13 would collect money from brothels, drug dealers, and others on a regular basis.  If money was not paid, the gang would threaten these individuals with violence. Funds collected were provided to MS-13 leadership, generally the same day they were collected.

### Special Sentencing Factors Regarding Count One

28.　　In or about February 2023, in the District of Maryland, ██████████████ ████████ REYES REYES, and RIVERA CANALES, did unlawfully conspire and agree with each other and others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim L.L.F., in violation of Maryland Code, Criminal Law § 2-201(a)(1), and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

29.     On or about February 24, 2023, in the District of Maryland, ████████████ ████████████ REYES REYES, and RIVERA CANALES, feloniously, willfully, and with deliberately premeditated malice, killed and murdered, and aided and abetted the killing and murder of Victim L.L.F., in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 2-201.

18 U.S.C. § 1962(d).

## COUNT TWO

### Accessory After the Fact

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1-24 of Count One of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      At all times relevant to this Indictment, MS-13, including its leaders, members, and associates, constituted an enterprise, as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce.   The enterprise constituted an ongoing organization whose leaders, members, and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3.      At all times relevant to this Indictment, the above-described enterprise, MS-13, through its leaders, members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder in violation of Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, and 2-206, 1-201, 1-202, and the Common Law of Maryland; acts involving extortion in violation of Maryland Code, Criminal Law §§ 3-701 and 3-705, 1-201, 1-202, and the Common Law of Maryland; acts indictable under Title 18, United States Code, Section 1951 (relating to interference with commerce, robbery, or extortion); and offenses involving narcotics trafficking in violation of Title 21, United States Code, Sections 841 and 846.

4.      On or about February 24, 2023, in the District of Maryland, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, MS-13 enterprise members ████████████████████ Elmer

Reyes Reyes, and Ismael Rivera Canales, and others known and unknown to the grand jury did intentionally and knowingly murder Victim L.L.F., in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland, all in violation of Title 18, United States Code, Sections 1959(a)(l) and 2.

5.      On or about February 24-25, 2023, in the District of Maryland, **ISMAEL LOPEZ LOPEZ, aka Melo, El Gato,** and **JOSE ROBERTO RAMOS LOPEZ, aka Agonia, Moreno, El Sin**, knowing that an offense against the United States had been committed, to wit, the murder in aid of racketeering of Victim L.L.F. on or about February 24, 2023, as described in paragraphs 1-4 of this Count of the Indictment, in violation of Title 18, United States Code, Sections 1959(a)(1) and 2, knowingly received, relieved, and assisted the offenders  in order to hinder and prevent the offenders' apprehension, trial and punishment, to wit, defendants **ISMAEL LOPEZ LOPEZ, aka Melo, El Gato,** and **JOSE ROBERTO RAMOS LOPEZ, aka Agonia, Moreno, El Sin**, removed the body of Victim L.L.F. and moved it to a secluded clandestine grave, and disposed of other evidence of the above-described murder in aid of racketeering of Victim L.L.F.

18 U.S.C. § 3

## COUNT THREE

**Conspiracy to Commit Assault with a Dangerous Weapon in Aid of Racketeering**

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1-24 of Count One of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. At all times relevant to this Indictment, MS-13, including its leaders, members, and associates, constituted an enterprise, as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose leaders, members, and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3. At all times relevant to this Indictment, the above-described enterprise, MS-13, through its leaders, members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder in violation of Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, and 2-206, 1-201, 1-202, and the Common Law of Maryland; acts involving extortion in violation of Maryland Code, Criminal Law §§ 3-701 and 3-705, 1-201, 1-202, and the Common Law of Maryland; acts indictable under Title 18, United States Code, Section 1951 (relating to interference with commerce, robbery, or extortion); and offenses involving narcotics trafficking in violation of Title 21, United States Code, Sections 841 and 846.

4. On or about August 28, 2022, in the District of Maryland, the defendant,

**JOSUE MAURICIO ARRUE PANIAGUA,**

for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to knowingly and intentionally assault J.C.M. with a dangerous weapon, in violation of Maryland Code, Criminal Law, Sections 3-202(b)(2), 1-202, and the Common Law of Maryland.

18 U.S.C. § 1959(a)(6)

---

## COUNT FOUR

### Assault with a Dangerous Weapon in Aid of Racketeering

The Grand Jury for the District of Maryland further charges that:

1.    Paragraphs 1-3 of Count Three of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.    On or about August 28, 2022, in the District of Maryland, the defendant,

### JOSUE MAURICIO ARRUE PANIAGUA,

for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did knowingly and intentionally assault J.C.M. with a dangerous weapon, and did aid and abet the assault of J.C.M. with a dangerous weapon, in violation of Maryland Code, Criminal Law, Sections 3-202(b)(2), and the Common Law of Maryland.

18 U.S.C. §§ 1959(a)(3) and 2.

## COUNT FIVE

**Possession with the Intent to Distribute Controlled Substances**

The Grand Jury for the District of Maryland further charges that:

On or about November 3, 2022, in the District of Maryland, the Defendant,

**JOSE EDUARDO GUARDADO MERCADO,**

did knowingly and intentionally possess with intent to distribute a mixture or substance

containing a detectable amount of marijuana, a Schedule I Controlled Substance.

21 U.S.C. §§ 841(a)(1), (b)(1)(D)

<u>**COUNT SIX**</u>

**Possession of a Firearm in Furtherance of a Drug Trafficking Crime**

The Grand Jury for the District of Maryland further charges that:

On or about November 3, 2022, in the District of Maryland, the Defendant,

**JOSE EDUARDO GUARDADO MERCADO**,

did knowingly possess a firearm, to wit, a NORINCO, model M-201C, 9x19 millimeter, serial

number 4CCC4259, in furtherance of a drug trafficking crime for which he may be prosecuted in

a court of the United States, that is, possession with the intent to distribute a controlled substance,

in violation of Title 21, United States Code, Section 841(a), as alleged in Count Four of this

Indictment.

18 U.S.C. § 924(c)(1)(A)

_____

## COUNT SEVEN

The Grand Jury for the District of Maryland further charges that:

On or about May 26, 2023, in the District of Maryland, the defendant,

**JOSUE MAURICIO ARRUE PANIAGUA,**

being an alien illegally and unlawfully in the United States, and knowing that he was an alien illegally and unlawfully in the United States, did knowingly possess firearms and ammunition, to wit, a CZ model CZ p-10 C, 9x19 millimeter, bearing serial number C267573, two (2) rounds of Winchester .38 special caliber ammunition, one (1) round of Hornady .38 special caliber ammunition, one (1) round of Remington Peters .38 special caliber ammunition, one (1) round of Koenig .38 caliber ammunition, one (1) round of Federal Cartridge 9mm Luger ammunition, one (1) round of AMMO Inc., 9mm Luger ammunition, all in and affecting commerce.

18 U.S.C. § 922(g)(5)(A)

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.  Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 924(d), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c), in the event of the defendants' convictions.

### Narcotics Forfeiture

2.  Upon conviction of the offense alleged in Count Five, the defendant,

**JOSE EDUARDO GUARDADO MERCADO,**

shall forfeit to the United States, pursuant to 21 U.S.C. § 853(a):

   a. any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such offense; and

   b. any property used, or intended to be used, in any manner or part, to commit, or facilitate the commission of, such offense.

### Firearms and Ammunition Forfeiture

3.  Pursuant to 18 U.S.C. § 924(d), upon conviction of the offenses alleged in Counts Six and Seven, the defendant(s) shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), any firearms and ammunition involved in the offenses.

### Property Subject to Forfeiture

4.  The property to be forfeited includes, but is not limited to, the following:

a.  a CZ model CZ p-10 C, 9x19 millimeter handgun, bearing serial number C267573;

b.  approximately two (2) rounds of Winchester .38 special caliber ammunition;

c.  approximately one (1) round of Hornady .38 special caliber ammunition;

d.  approximately one (1) round of Remington Peters .38 special caliber ammunition;

e.  approximately one (1) round of Koenig .38 caliber ammunition;

f.  approximately one (1) round of Federal Cartridge 9mm Luger ammunition;

g.  approximately one (1) round of AMMO Inc. 9mm Luger ammunition;

h.  a NORINCO, model M-201C, 9x19 millimeter, serial number 4CCC4259; and

i.  approximately nine (9) live rounds of 9x19 millimeter ammunition.

28 U.S.C. § 2461(c)
18 U.S.C. § 924(d)

*Erek L. Barron /KSC*

EREK L. BARRON
United States Attorney

A TRUE BILL:

▮▮▮▮▮▮▮▮▮▮           3/26/24
Foreperson           Date:

24